UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MARGARET NOLAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:11-CV-19 |
| | ) (VARLAN/GUYTON) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 11 and 12] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 13 and 14]. Plaintiff Margaret Nolan seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On September 20, 2007 the Plaintiff filed an application for a period of disability, disability insurance benefits, and/or supplemental security income, claiming a period of disability which began October 30, 2006. [Tr. 91-99]. After her application was denied initially and also denied upon reconsideration, the Plaintiff requested a hearing. On September 10, 2009, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 20-38] On November 10, 2009, the ALJ found that the Plaintiff was not disabled.

1

The Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

I. **ALJ FINDINGS**

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2011.

2. The claimant has not engaged in substantial gainful activity since October 30, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: adjustment disorder with depressed mood and anxiety (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she can relate to co-workers, set limited goals, adapt to infrequent change, understand and remember for simple and detailed, non-complex tasks, and sustain concentration and persistence for the above tasks, despite periods of increased signs and symptoms. She will experience some, but not substantial difficulty interacting with the general public and supervisors.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on January 11, 1967 and was 39 years old, which is defined as a "younger individual," on the alleged

2

disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See Social Security Ruling 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 30, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 9-15].

## II.  DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

3

experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.     STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was

5

reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. EVIDENCE

The evidence in the record can be summarized as follows.

### A. Medical Evidence

*1. Treating Sources*

William B. Bingham, M.D., treated Plaintiff from March 15, 2007 through October 16, 2007. Problems noted during this time include hypertension, sebaceous cyst, stress, weakness, dizziness, headaches, and right flank nodule. [Tr. 170-177]. During this period, Dr. Bingham observed: "She looks a little stressed. Otherwise, she interacts appropriately;" "She is still under

some stress but is dealing with that better;" and "She is followed through Ridgeview and continues on Zoloft which helps." [Tr. 172-73].

Additional records were received from Dr. Bingham, reflecting treatment from October 2, 1990 through February 4, 2008. Conditions and complaints addressed include heart murmur, migraine headaches, chest pain, gastroenteritis, fatigue, chronic depression, breast nodule, pelvic pain, bronchitis, dizziness, palpitations, upper respiratory infection, GERD, abdominal pain, right elbow contusion, rib pain, hypertension, leg cramps, anxiety, shortness of breath, right knee pain, and epigastric pain. [Tr. 233-77]. On a visit on February 4, 2008, Dr. Bingham prescribed a Klonopin 1 mg to calm her anxiety until the prescription for Paxil she was became effective. [Tr. 266].

The Plaintiff continued treatment by Dr. Bingham from March 5, 2008 through June 30, 2008, due to hot flashes, headaches, blurred left eye vision, menorrhagia with anemia, depression, anxiety, and chest discomfort. [Tr. 306-316]. The notes from these visits indicate continuing stress in the Plaintiff's life. In notes from a visit on June 30, 2008, Dr. Bingham stated that the Plaintiff still had trouble with anxiety but was improving and only took Klonopin as needed. [Tr. 306].

Plaintiff received treatment at Ridgeview Psychiatric Center from September 20, 2007 through December 3, 2007, during which time she carried the diagnosis of adjustment disorder with depressed mood. [Tr. 178-96]. During treatment, Plaintiff was suffering frequent crying spells, poor appetite resulting in weight loss, excessive worry, insomnia, fatigue, depression, distractibility, poor concentration, short attention span, fears/phobias, restlessness, stress, low self-esteem, temper problems, decreased memory, difficulty focusing, decreased motivation, difficulty completing tasks, and irritability.

Plaintiff continued treatment at Ridgeview Psychiatric Center from December 11, 2007 through February 13, 2008, during which time she was suffering frustration, depression, sleep disturbance, poor memory, poor concentration, frequent headaches, daytime fatigue, decreased energy, decreased motivation, decreased interest, crying spells, and irritability. [Tr. 221-232]. Her family and life stressors persisted. However, her thought process was noted to be intact, her affect was appropriate to mood, and she appeared calm. [Tr. 227, 228, 231, 232].

The Plaintiff also continued treatment at Ridgeview Psychiatric Center from March 12, 2008 through April 28, 2009, due to the diagnosis of adjustment disorder with depressed mood. [Tr. 317-28]. During this time, Plaintiff was suffering insomnia, increased stress, poor appetite with weight loss, poor concentration, difficulty focusing, increased depression, anger, frustration, sadness, nightmares, decreased memory, distractibility, frequent crying spells, increased anxiety around people, racing thoughts, decreased motivation and energy, difficulty completing tasks, social isolation, anxiety attacks, excessive worry, mood swings, and nervousness. The Plaintiff reported that her Zoloft seemed to be helping decrease her symptoms. [Tr. 322-327].

The most recent records from Ridgeview detail visits from March 13, 2009, to early 2010. Throughout the remainder of 2009, the Plaintiff reported that she was, essentially, "doing okay" [Tr. 336-39].[1] The Plaintiff's doctor even encouraged her to volunteer or find a part time job, though she was not motivated to do so. [Tr. 338].

2.  *Consultative Examinations*

On December 7, 2007, Plaintiff underwent consultative exam by Ellen Denny, Ph.D. The Plaintiff explained to Dr. Denny that "she left her job due to emotional problems." [Tr. 199].

---

[1] This evidence was submitted to the Appeals Council after the Plaintiff had requested review of the ALJ's decision. The Court will address the timing of this submission and discuss the merits of a sentence six remand later in this Report and Recommendation.

The Plaintiff reported that: she had been depressed for about two years, the condition had worsened, she had low motivation and energy, lacked desire to engage in pleasurable activities, cried frequently for no reason, and had difficult falling asleep and staying asleep. [Tr. 201]. She reported that her appetite had declined resulting in a weight loss of about ten pounds in two months and that she had become irritable and angrier than usual. The Plaintiff reported: her memory had declined and she had difficulty focusing; she felt anxious and worries about things she cannot do anything about; she had been having a panic attack about once a day; and she was afraid of going out due to her anxiety. [Tr. 201].

Dr. Denny observed that: Plaintiff frequently appeared distracted; her speech was delayed; she often had a dazed/confused look; she was fidgety throughout the interview; she appeared nervous as her hands were shaking; she displayed a depressed mood with congruent affect; she began to cry several times; she did not smile; and she appeared to have difficulty processing questions. [Tr. 201]. Nonetheless, Dr. Denny found that: the Plaintiff was neatly dressed, understood the purpose of their meeting, and established rapport easily; she "displayed no impairment in comprehension and judgment;" and she understood two of three common proverbs. [Tr. 200-02]. The Plaintiff displayed moderate impairment in understanding and remembering and in attention and concentration, and she displayed a mild impairment in abstract thinking. [Tr. 200-01]. She demonstrated no impairment in comprehension and judgment. [Tr. 201].

Dr. Denny explained her diagnostic impression as follows:

> Based on observations and interview, the following diagnoses were indicated. The claimant has experienced several stressors over the last couple of years and she seems to be having difficulty coping with them. Symptoms reported would indicate the presence of a major depressive disorder which seems to be moderate at this time. Symptoms reported also indicate the presence of generalized anxiety

9

> disorder and panic disorder with agoraphobia. She seems to be functioning in the borderline range of intellectual ability, but further testing would be necessary in order to clarify this.

[Tr. 202]. Dr. Denny assigned a 45 global assessment of functioning ("GAF") score.

On January 7, 2008, Victor L. O'Bryan, Ph.D., a reviewing state agency psychologist, opined Plaintiff is moderately limited in her ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to respond appropriately to changes in the work setting. [Tr. 217-18].

Dr. Bryan found the Plaintiff was not significantly limited in any aspect of her understanding and memory. He found she was not significantly limited in her ability to: carry out short, simple instructions, perform within a schedule, sustain a regular routine without a supervisor, make simple work-related decisions, ask simple questions or request assistance, accept instructions and respond to criticism, maintain socially acceptable behavior, be aware of normal hazards, travel in unfamiliar places, set realistic goals, and make independent plans. [Tr. 217-18].

In summary, Dr. O'Bryan found the Plaintiff "can do lower level detailed work . . . CPP: limited, but adequate. Some social problems. Will do better in work setting with few social demands. . . . Can adapt to mild levels of stress and infrequent change in work routine." [Tr. 219].

On May 5, 2008, Thomas D. Neilson, Psy.D., a reviewing state agency psychologist opined Plaintiff is moderately limited in her ability to: maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to complete a normal workday and workweek without interruptions from

10

psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to respond appropriately to changes in the work setting; and to set realistic goals or make plans independently of others. [Tr. 296-297].

Dr. Neilson found, however, that the Plaintiff was not significantly limited in any aspect of her understanding and memory. He found that the Plaintiff had no significant limitations on her ability to: carry out simple *or detailed* instructions, sustain an ordinary routine, work in coordination with others, make simple work-related decisions, ask simple questions or request assistance, get along with coworkers, maintain socially appropriate behavior, be aware of normal hazards, or travel in unfamiliar places. [Tr. 286-97].

In summary, Dr. Neilson opined Plaintiff can: understand and remember for simple and detailed, non-complex tasks; sustain concentration and persistence for these tasks, despite periods of increased signs and symptoms; interact with general public and supervisors, despite experiencing some but not substantial difficulties; relate to coworkers; and set limited goals and adapt to infrequent change. [Tr. 298].

**B.     Other Evidence**

At the hearing before the ALJ, Edward Moffit Smith, a vocational expert, testified that the balance of the Plaintiff's work history entailed sedentary, skilled work as a secretary. [Tr. 36]. The ALJ posed a hypothetical to Mr. Smith incorporating the limitations the ALJ found in his RFC determination, and Mr. Smith responded that the Plaintiff could perform positions, such as a photocopy machine operator and office helper, and other work that is available in significant numbers in both the regional and national economies. [Tr. 37-38]. Mr. Smith testified that if the Plaintiff's psychological limits were marked and/or seriously limited, she would be precluded

11

from employment. [Tr. 38].

On August 21, 2009, Donna J. Bardsley, M.S., CVE, performed an independent vocational analysis as commissioned by the Plaintiff. Ms. Bardsley noted reviewing the limitations in a narrative report from Ellen S. Denny, Ph.D., dated December 7, 2007, as well as the Mental Residual Functional Capacity Assessment completed by Thomas D. Neilson, Psy.D., on May 5, 2008. Ms. Bardsley opined that a hypothetical individual, currently 42 years of age, who is a high school graduate, and has past work as a secretary, who is restricted to the full extent of the limitations in either report reviewed, would not be able to perform their past work or any work which exists in substantial numbers in the local or national economy. [Tr. 163-168].

## V.  POSITIONS OF THE PARTIES

The Plaintiff argues generally that the "ALJ erred in evaluating the severity of Plaintiff's mental impairments and in failing to properly consider their effect on Plaintiff's ability to work." This general argument is comprised of two specific allegations. [Doc. 12 at 7]. First, the Plaintiff alleges that the ALJ erred in his weighing of the medical evidence [Doc. 12 at 7-8], and second, the Plaintiff alleges that as a result of his error in weighing the medical evidence, the ALJ also erred in his RFC determination [Doc. 12 at 10].

The Commissioner maintains that the ALJ's RFC determination and disability decision are supported by substantial evidence. [Doc. 12 at 10, 15-16].

## VI.  ANALYSIS

The Court will address each of the Plaintiff's arguments, in turn, and will also address the Plaintiff's late submission of evidence.

### A. Weighing of the Medical Evidence

The Plaintiff argues that the ALJ erred by not affording proper weight to the findings and opinion of Dr. Denny. The Plaintiff maintains that, "[h]ad proper weight been accorded to the opinion of Dr. Denny, a finding of disability could have been reached." [Doc. 12 at 8]. The Plaintiff notes that Dr. Denny was the only medical source to examine the Plaintiff and contends that her findings should have been afforded additional weight by the ALJ. [Doc. 12 at 7-8].

The Commissioner responds that the ALJ properly gave little weight to the opinion of Dr. Denny. [Doc. 14 at 10]. The Commissioner notes that Dr. Denny was a one-time examiner, Dr. Denny was not a "treating source," and therefore her opinion was not entitled to any special deference. [Doc 14 at 10 (citing Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 876 (6th Cir. 2007))]. He further argues that the ALJ did not wholly discredit Dr. Denny because the ALJ ultimately found that the Plaintiff had limitations in some of the same areas as identified by Dr. Denny, only to a lesser degree. [Doc. 14 at 10].

The ALJ discussed Dr. Denny's findings as follows:

> The claimant has been prescribed psychotropic medication and undergone counseling for her mental impairments. Specifically, the claimant has never been hospitalized for any type of psychiatric problem and treating progress notes indicate that the claimant's anti-depressant medication has been effective. The undersigned does not find Dr. Denny's determinations credible with regard to the claimant's ability to do work related activities. She noted the claimant was neatly and casually dressed, grooming and hygiene were good, and she was able to comprehend the examiner's communication with her, as well as express her own thoughts and ideas. She appeared to understand the purpose of the assessment and did not display delusional thinking or ideation. The examiner's assessment appears to be based on the psychologist's report and conclusions because she was not a treating psychologist. Dr. Denny examined the claimant on only one occasion and her conclusions appear to be based on the claimant's subjective complaints and not findings. The overall evidence indicates mild

13

to moderate mental limitations with regard to the claimant's residual functional capacity.

[Tr. 13 (internal citations omitted)].

The ALJ instead relied upon the psychological evaluations of Drs. Neilson and O'Bryan, neither of whom examined the Plaintiff. The ALJ noted that these doctors were "uniquely qualified to articulate findings of fact about the nature and severity of the claimant's impairment" and that they had the advantage of reviewing the entire record. Moreover, in finding that the Plaintiff was not as severely limited as she reported to Dr. Denny, the ALJ discussed the Plaintiff's successful treatment using anti-depressants. [Tr. 13]. He also noted the wide variety of household tasks she was able to complete, including caring for her children, driving, caring for her mother, shopping, and completing household chores including laundry. [Tr. 13].

"Generally, [an ALJ will] give more weight to the opinion of a source who has examined [a claimant] than to the opinion of a source who has not examined [a claimaint]." 20 C.F.R. § 404.1527(d)(1) . Consistent with the ALJ's analysis, however, the Court of Appeals for the Sixth Circuit has noted that in certain circumstances opinions from State agency psychological consultants entitled to greater weight than the opinions of examining sources if the consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment. See Rogers v. Comm'r of Social Sec., 486 F.3d 234, 245 (6th Cir. 2007)(citing SSR-96-6). Further, the Court of Appeals has found that an ALJ may rely upon the opinion of a non-examiner over that of an examining source when the non-examiner has reviewed the record and noted the reasons for their differing opinion. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir.1994).

14

In this case, Drs. Neilson and O'Bryan had the advantage of viewing years of treatment records from Ridgeview that were unavailable to Dr. Denny on December 7, 2007, when she examined the Plaintiff, including notes that Zoloft was helping her [Tr. 327]. Both Dr. Neilson and Dr. O'Bryan stated the reasons why their opinions differed from those of Dr. Denny and in what ways her restrictions were in consistent with the record. [See Tr. 215, 294].

Moreover, their findings were more consistent with the evidence in the record than Dr. Denny's. Their findings that the Plaintiff could – for example, follow instructions, ask simple questions or request assistance, accept instructions and respond to criticism, maintain socially acceptable behavior, be aware of normal hazards, travel in unfamiliar places, set realistic goals, and make independent plans – were consistent with the Plaintiff's self-report of her own abilities and her household duties. Among other things, the Plaintiff reported that she had previously worked for about twenty years as a secretary [Tr. 27], and currently cared for her two children as essentially a single parent [Tr. 227] and her mother [Tr. 29].

Further, Dr. Denny's findings relied almost exclusively on the Plaintiff's self-reporting in her clinical interview. [Tr. 198].

Accordingly, the Court finds that the ALJ did not err in weighing the medical evidence in the record.

**B.     Residual Functional Capacity Determination**

The Plaintiff also argues that the ALJ's failure to properly weigh the medical evidence and to consider the Plaintiff's mental impairments resulted in his residual functional capacity not being supported by substantial evidence. The Commissioner, as stated above, maintains that the ALJ's decision is supported by substantial evidence.

15

For the reasons stated above, the Court finds that the ALJ did not err in weighing the medical evidence in the record. Specifically, he did not err in finding the Dr. Denny's opinion was not credible. The ALJ relied on his findings regarding the medical evidence in the record and properly determined the Plaintiff's residual functional capacity. Thus the Court finds that the ALJ did not err in his RFC determination. The Court finds that the non-exertional limitations found by the ALJ in his RFC determination, which included, *inter alia*, the ability to complete non-complex tasks, adapt to infrequent change, and relate to co-workers, were consistent with the evidence as a whole.[2]

Accordingly, the Court finds that the ALJ did not err in his RFC determination or in the hypothetical he presented to the vocational expert based upon this RFC.

**C.    Sentence Six Remand**

After the hearing before the ALJ, the Plaintiff submitted additional evidence to the Appeals Council. [Tr. 332-46]. This Court may consider this new evidence only for the purpose of determining whether remand is appropriate under sentence six of 42 U.S.C. § 405(g). Cotton v. Sullivan, 2 F.3d 692, 696 (6th Cir. 1993).

The Plaintiff has not stated that she seeks a sentence six remand with regard to this evidence, but to the extent the submission of this evidence could liberally be interpreted as a request for a remand pursuant to sentence six of 42 U.S.C. § 405(g), the Court finds that this request is not well-taken. A court cannot remand a case for consideration of evidence that is presented after the ALJ's decision unless the plaintiff satisfies the requirements for remand set forth in 42 U.S.C. § 405(g). See Cotton, 2 F3d at 695. As the Court of Appeals for the Sixth

---

[2] Though neither the undersigned nor the ALJ relied on this statement in determining that the Plaintiff was not disabled, Plaintiff herself stated that she did not know of anything that was preventing her from returning to work besides the many family-related stressors in her life. [See Tr. 28].

Circuit has noted, a plaintiff attempting to obtain a remand to consider new evidence pursuant to 42 U.S.C. § 405(g), "must show that the evidence is new, that it is material, and that there is good cause for the failure to incorporate it into the record at the administrative level." Id.

The Court finds that the Plaintiff in this case has failed to demonstrate any of these criteria for remand.

## VII. CONCLUSION

Based on the foregoing, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing the full range of work with certain enumerated non-exertional limitations. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[3] that Plaintiff's Motion For Summary Judgment **[Doc. 11]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 13]** be **GRANTED**.

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).